UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**MARK BERUBE, on behalf of himself
and all others similarly situated,**
   **Plaintiff,**

  v.                Case No. 20-C-1783

**ROCKWELL AUTOMATION, INC.,**
**et al.,**
   **Defendants.**

---

## DECISION AND ORDER

Plaintiff Mark Berube alleges that the Rockwell Automation Pension Plan ("the Plan"), violates the Employee Retirement Income Security Act of 1974 ("ERISA") because the plan's formulas for calculating certain annuity types rely on outdated actuarial assumptions and, therefore, do not produce actuarially equivalent benefits. Before me now is the defendants' motion for summary judgment based on the affirmative defense of lack of exhaustion. *See* Fed. R. Civ. P. 56.

### I. BACKGROUND

According to the allegations of the complaint, defendant Rockwell Automation, Inc., established the Plan in 1945. The Plan is an "employee pension benefit plan" and a defined benefit plan within the meaning of ERISA. 29 U.S.C. §§ 1002(2)(A), 1002(35). The Plan has 36 sub-plans, which cover the benefit plans of various business that Rockwell acquired. One of these sub-plans, the "A-B Sub-Plan," covers the benefits of employees associated with the Allen-Bradley Company. The plaintiff is a participant in the A-B Sub-Plan (Compl. ¶ 32), which the Plan describes as Number B006 (Plan Ex. 1, Sub-Plan Index).

The plaintiff, who was married at the time of his termination from Rockwell, chose to receive his pension benefits in the form of a 50% Joint and Survivor Annuity ("JSA"). The plaintiff contends that ERISA required his 50% JSA to be actuarially equivalent to a single life annuity. (Compl. ¶ 18.) He alleges that the A-B Sub-Plan contains three "formulas" purporting to convert benefits to a JSA in an actuarially equivalent manner. (*Id.* ¶ 34.) Two such formulas are actually tables of formulas that contain factors for converting benefits based on the age of the participant and his or her spouse. (*Id.*; *see also* Plan Exs. 4A & 4B.) The third formula is a series of tables for converting benefits into a 75% JSA. (Compl. ¶ 34.) Conversion of the plaintiff's benefits was achieved through use of one of the tabular formulas in the Plan for producing a 50% JSA that was supposedly actuarially equivalent to a single life annuity. (*Id.* ¶ 54.) The plaintiff alleges, however, that the "tabular factors" contained in the Plan are "based on unreasonable, outdated actuarial assumptions." (*Id.*) He further alleges that, had the conversion of his benefits been performed using reasonable, up-to-date actuarial assumptions, he would be receiving an annuity in a monthly amount that is $52.67 greater than the monthly amount he actually receives. (*Id.*)

The plaintiff alleges that the Plan's incorporation of outdated actuarial assumptions violates ERISA because it results in the Plan's paying benefits in forms that are not actuarially equivalent to a single life annuity. (Compl. ¶¶ 85, 89.) His complaint includes three claims for relief on behalf of himself and a proposed class of Rockwell participants and beneficiaries. At this stage of the proceedings, the plaintiff's first two claims appear to be identical. In these claims, the plaintiff essentially seeks to (1) reform the Plan by requiring that it be amended to include formulas for converting benefits that are based on

2

reasonable, up-to-date actuarial assumptions, and (2) require the Plan to recalculate and pay benefits under the reformed plan. (*See id.* ¶¶ 82–92.) He brings this claim under 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

The plaintiff's third claim is one against the Plan's Employee Benefits Plan Committee ("the Plan Committee") for breach of fiduciary duty. (Compl. ¶¶ 93–103.) In this claim, the plaintiff notes that the Plan's fiduciaries must discharge their duties in accordance with the documents and instruments governing the plan "insofar as such documents and instruments are consistent with the provisions of" ERISA. 29 U.S.C. § 1104(a)(1)(D). However, the plaintiff alleges, because the actuarial assumptions embedded in the Plan do not produce actuarially equivalent benefit forms, the Plan's fiduciaries had a duty to override the Plan's terms and direct that benefits be calculated using updated actuarial assumptions. (Compl. ¶¶ 97–99.) The plaintiff alleges that, "[i]n following the Plan," the members of the Plan Committee breached their fiduciary duties. (*Id.* ¶ 99.) The plaintiff also alleges that Rockwell itself is a proper defendant to this claim because it "breached its fiduciary duties to supervise and monitor the Committee." (*Id.* ¶ 100.)

After the plaintiff filed his complaint, the defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) based on the plaintiff's failure to exhaust the remedies available to him under the Plan. I denied that motion on the ground that lack of exhaustion is an affirmative defense that, in this case, could not be raised in a motion under Rule 12(b)(6) because the plaintiff did not plead facts showing that he had failed to exhaust.

3

After I denied the motion to dismiss, the defendants filed a motion for summary judgment based on their lack-of-exhaustion defense. In response to the motion, the plaintiff took discovery from the defendants related to the defense. In opposing the defendants' motion for summary judgment, the plaintiff does not dispute that he did not file a claim under the plan's internal review process. However, he contends that, for several reasons, exhaustion should not be required: exhaustion would be futile, the plan's administrative process could not provide him with appropriate relief, and exhaustion would not otherwise serve any useful purpose. I consider these matters below.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable factfinder could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

### A.  Standards Governing ERISA Exhaustion

ERISA does not contain an administrative exhaustion requirement. *See Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1235 (7th Cir. 1997). However, the Seventh Circuit has held that a district court may require exhaustion of plan remedies before allowing the plaintiff to proceed with a lawsuit alleging the violation of an ERISA statutory provision. *Id.* The district court's option to require exhaustion is based on ERISA's statutory requirement that plans issue written decisions denying claims and allow an administrative appeal of the denial to plan fiduciaries. *See id.* (discussing 29

4

U.S.C. § 1133). Because Congress chose to require plans to offer administrative review, a district court has discretion to require a claimant to use that review process. *Id.* The Seventh Circuit has identified several purposes that are served when exhaustion is required: the plan's own review process may resolve a certain number of disputes; the facts and the administrator's interpretation of the plan may be clarified for the purposes of subsequent judicial review; and an exhaustion requirement encourages private resolution of internal employment disputes. *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999). The Seventh Circuit has also identified certain circumstances in which exhaustion should not be required: when resort to administrative remedies would be futile, when the remedy provided through the administrative process would be inadequate, and when there is a lack of access to meaningful review procedures. *Orr v. Assurant Employee Benefits*, 786 F.3d 596, 602 (7th Cir. 2015). Ultimately, in exercising its discretion to require or excuse exhaustion, the district court should ask "whether some useful purpose would be served by requiring" the plaintiff to exhaust the Plan's internal remedies. *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 502 (7th Cir. 2006).

**B.     Administrative Process Available Under the Rockwell Plan**

As required by ERISA and its implementing regulations, *see* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1, the Rockwell Plan provides a claims and appeals procedure for making claims against the Plan. (Plan § 13.050.) Under this procedure, a person initiates an administrative claim by filing a written claim with the Employee Benefits Appeals Committee (the "Appeals Committee"). (*Id.* § 13.050(b)(i).) Once a written claim is filed, the Appeals Committee must decide it within 90 days "unless special circumstances require an extension of time for processing," in which case the Appeals Committee must

5

decide the claim within 180 days. (*Id.*) If the Appeals Committee denies the claim, it must provide the claimant with a written notice that provides

> (A) the specific reason or reasons for the denial, (B) specific references to pertinent provisions of the Plan or Applicable Sub-Plan upon which the denial is based, (C) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation as to why such material or information is necessary, and (D) appropriate information as to the steps to be taken if the claimant wishes to submit a claim for review.

(*Id.*)

If the Appeals Committee denies the claim, the claimant may appeal the denial to the Plan Administrator by filing a written appeal within 60 days of the denial notice. (*Id.* § 13.050(b)(ii).) The Plan Administrator (or his or her designee) then has 60 days to "make a final, full and fair review of" the decision of the Appeals Committee and issue a written decision. (*Id.* § 13.050(b)(iii).) Again, however, if "special circumstances require an extension of time for processing," then the time to decide the appeal may be extended to 120 days. (*Id.*) The Plan Administrator's written decision on appeal must "contain specific reasons for the decision and specific references to the pertinent Plan provisions upon which the decision is based." (*Id.*)

During discovery relating to the exhaustion defense, the plaintiff took a deposition under Federal Rule of Civil Procedure 30(b)(6) of the Rockwell official most knowledgeable about the Plan's administrative procedures. (*See generally* Dep. of Peter Shippee; ECF No. 46-6.) This representative testified that the Appeals Committee does not have authority to amend the Plan in response to an administrative claim. (*Id.* at 25:3–25:6.) This representative also testified that he did not know if the Appeals Committee permitted live testimony during administrative review. (Def. Resp. to Pl. Proposed Finding

6

of Fact ("PFOF") ¶ 42.) Further, while the representative did not know whether the Appeals Committee had ever retained an expert to assist it in deciding a claim (Shippee Dep. at 18–21), the Plan provides that the Appeals Committee and Plan Administrator may employ professionals (including actuaries) to provide assistance and render advice as needed in carrying out the provisions of the Plan (Plan § 13.020(c)).

**C.     Analysis of Whether Plaintiff Should be Required to Exhaust**

In response to the defendants' motion for summary judgment, the plaintiff concedes that he did not file a claim under the Plan's administrative procedures. (Pl. Resp. to Def. PFOF ¶ 29.) However, he contends that he should be excused from having to exhaust those procedures for several reasons. First, he claims that exhaustion would be futile because the Plan is aware of this lawsuit and a prior, similar lawsuit brought by a different Plan beneficiary yet has failed to make changes to the Plan's actuarial assumptions. Second, he contends that exhaustion should not be required because the Plan fiduciaries who would decide his claim lack power to provide appropriate relief, such as reformation of the Plan. Finally, the plaintiff contends that filing a claim with the Plan would not otherwise further the purposes of the exhaustion doctrine.

Initially, I reject the plaintiff's argument that the Plan's failure to change its actuarial assumptions in response to this litigation and the prior suit establishes that exhaustion would be futile. As the Seventh Circuit has recognized, a defendant's failure to voluntarily provide the plaintiff with relief in response to a suit filed before the plaintiff attempted to exhaust does not show that exhaustion would be futile. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 671–72 (7th Cir. 2004). "[W]hen a claimant ignores the administrative remedies and proceeds directly to federal court, he cannot be allowed to justify his choice by the

7

fact that the plan defended itself in the lawsuit." *Id.* at 672. Otherwise, exhaustion would almost always have to be excused.

However, I agree with the plaintiff that the Plan fiduciaries who would decide any administrative claim do not have the authority to provide him with the requested relief and that no other useful purpose would be served by requiring exhaustion. In this suit, the plaintiff does not contend that he is receiving fewer benefits than he is entitled to receive under the Plan. Indeed, the plaintiff concedes that his current benefits were properly calculated under the terms of the Plan. What the plaintiff claims is that because the Plan's formulas for converting one benefit form to another benefit form are based on outdated actuarial assumptions, the Plan's benefit forms are not actuarially equivalent, as required by ERISA. *See* 29 U.S.C. § 1055(d)(1). Importantly, the conversion formulas are themselves terms of the Plan. (*See* Plan Exs. 4A–4D.) Thus, the only way to provide the plaintiff with relief on his claim would be to amend the Plan: the existing conversion formulas would have to be removed and replaced with formulas that were based on updated actuarial assumptions. Yet, the evidence in the record shows that the Plan fiduciaries who would hear the plaintiff's administrative claim lack authority to amend the Plan. (Shippee Dep. at 25:3–25:6.) Accordingly, the evidence indicates that the remedy provided through the administrative process would be inadequate, and that therefore exhaustion should be excused. *See Orr*, 786 F.3d at 602.

The defendants contend that the Plan has authority to grant the plaintiff relief because the Plan provides that the Plan Administrator and the Appeals Committee have authority to "carry out any other responsibility designated by ERISA." (Reply Br. at 8.) But the actual Plan language cited by defendants provides in full that the Plan Administrator

8

shall have power to "carry out any other responsibility designated by ERISA *as the responsibility of the Plan Administrator of the Plan* and all Sub-Plans." (Plan § 13.020(f)(v) (emphasis added).) The defendants do not point to any provision of ERISA that grants a plan administrator "responsibility" to amend plan provisions, and I am aware of none. Moreover, the defendants all but concede that the plaintiff could not obtain relief through the administrative process by suggesting that the most the Plan Administrator or Appeals Committee could do in response to the plaintiff's claim is "recommend" a Plan amendment to those with authority to amend the Plan. (Reply Br. at 9.)

The defendants next note that ERISA provides that a plan fiduciary must "discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of*" ERISA. 29 U.S.C. § 1104(a)(1)(D) (emphasis added). The defendants contend that this provision obligates the Plan Administrator and the Appeals Committee to "override the terms of the Plan if they determine the Plan is violating ERISA." (Reply Br. at 9.) Thus, the defendants contend, "if the Plan's actuarial assumptions violate ERISA, the [Appeals Committee] and Plan Administrator are authorized to grant [the plaintiff's] requested relief." (Br. in Supp. at 9.) But the defendants do not explain how the Plan Administrator or the Appeals Committee could "override" the Plan's existing conversion formulas through the process of deciding an administrative claim. Importantly, the conversion formulas are not Plan terms that a fiduciary may simply disregard. Instead, because an ERISA plan must be able to convert benefits in compliance with the actuarial-equivalence requirement, a fiduciary who believes that the formulas are outdated and thus violative of ERISA must *replace* the outdated formulas

9

with new ones. The defendants do not explain how the administrative-review procedure could result in the Plan Administrator or the Appeals Committee disregarding the Plan's existing conversion formulas and replacing them with new formulas that comply with ERISA's actuarial-equivalence requirement. The defendants have not, for example, submitted a declaration or affidavit from a Plan fiduciary in which the fiduciary claimed that, if the Plan Administrator or the Appeals Committee determined while adjudicating an administrative claim that the Plan's existing formulas violated ERISA, the Administrator or the Committee could, within the 90-to-180-day period for deciding the claim, create and approve new formulas and then recalculate the claimant's benefits under those formulas. Accordingly, I conclude that it is unlikely that the Plan's internal remedies could provide the plaintiff with an adequate remedy. *Orr*, 786 F.3d at 602.

The defendants also contend that, even if exhaustion could not provide the plaintiff with the relief he seeks, it would still serve the useful purpose of compiling a factual record that would assist the court in reviewing the plaintiff's claims. *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996). But the description of the administrative-review process in the Plan and in the discovery materials does not suggest that such review would yield a useful record for this case. The primary issues in this case are whether the plan's current conversion formulas produce actuarially equivalent benefit forms and, if they do not, how those formulas should be changed to bring them in line with ERISA's actuarial-equivalence requirement. These are issues that could likely be resolved only through use of expert testimony by actuarial professionals. But the Plan's administrative procedures do not explicitly provide for the submission of expert testimony. Although the Plan permits the Plan Administrator and or the Appeals Committee to "employ such legal,

10

medical, accounting, clerical and other assistance (including . . . actuarial assistance) as it may deem appropriate in carrying out the provisions of" the Plan (§ 13.020(c)), the Plan does not contemplate using the administrative-review procedure to decide a dispute involving actuarial science. Indeed, given the Plan's relatively short time limit for the Appeals Committee to decide the claim (90 to 180 days), it is difficult to imagine that the Committee could, within the time provided, consider the plaintiff's initial claim, retain its own actuary, have the actuary form an opinion as to the reasonableness of the Plan's actuarial assumptions, and, if necessary, propose new formulas or methods for converting benefit forms.

    The defendants claim that administrative review would at least create a factual record about how the plaintiff's benefits were calculated under the Plan. The defendants bring this up because, in a prior case brought by a different Plan participant who also challenged the Plan's actuarial assumptions, the plaintiff learned, after approximately a year and a half of litigation, that the Plan did not use any actuarial assumptions at all when converting his benefits. *See Smith v. Rockwell Automation, Inc.*, No. 19-C-0505, 2020 WL 7714663, at *2 (E.D. Wis. Dec. 29, 2020). That was because the participant, Smith, accrued his retirement benefits in the benefit form he ultimately selected, which meant that the Plan did not have to convert his benefits at all. After learning this fact, Smith voluntarily dismissed his suit. The defendants here conjecture that, had Smith used the Plan's administrative procedures, he would have learned before filing his suit that the Plan did not use actuarial assumptions when calculating his benefits. The defendants contend that, to avoid a potentially similar waste of judicial resources, Berube should be required to exhaust his administrative remedies. However, the problem that arose in *Smith* is

11

unlikely to arise a second time, and the small possibility that it could is not sufficient to require exhaustion. *See Lindemann*, 79 F.3d at 650 (noting that the advantages of exhaustion should be balanced against the inconvenience of having to exhaust).

More generally, I do acknowledge that a district court might not abuse its discretion by requiring exhaustion in this case. Perhaps, despite appearances, the Plan Administrator or Appeals Committee could provide the plaintiff with appropriate relief or compile a useful record. But the Seventh Circuit has acknowledged that a district court has discretion to waive exhaustion even under circumstances in which it could have required it. *See Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138–39 (7th Cir. 1997). And here, based on the Plan language and the discovery on file, I conclude that exhaustion would likely not serve any useful purpose. The Plan Administrator and the Appeals Committee likely could not provide the plaintiff with appropriate relief, and the administrative process seems ill-equipped to deal with the factual issues that are central to the plaintiff's claim. Accordingly, the defendants' motion for summary judgment based on lack of exhaustion will be denied.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment for failure to exhaust administrative remedies (ECF No. 25) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 26th day of January, 2022.

                                                 s/Lynn Adelman_____
                                                 LYNN ADELMAN
                                                 United States District Judge